UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DELTA SIGMA THETA SORORITY INC.,

    Plaintiff,

    v.

LETISHA D. BIVINS, *et al.*

    Defendants.

Civil Action No. 13-252 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

In this trademark infringement suit, the plaintiff, Delta Sigma Theta Sorority, Inc., seeks to enjoin the defendants, Letisha D. Bivins ("Bivins"), Alphonso D. Goins ("Goins"), and FratHouse Clothing, LLC ("FratHouse")[1] (collectively, "the defendants"), from selling merchandise that allegedly infringes upon its registered trademarks, as well as to recover damages from the defendants. *See* Compl., ECF No. 1, *generally*. Pending before the Court are Defendants Bivins and Goins' Joint Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction; 12(b)(3) for improper venue; and 12(b)(6), for failure to state a claim against Defendant Bivins. *See* Defs.' Joint Mot. Dismiss ("Defs.' Mot.") at 1, ECF No. 51. For the reasons discussed below, the motion is granted in part on

---

[1] Defendant FratHouse has yet to appear in this matter. Although Defendant FratHouse purported to file a Motion to Dismiss on April 10, 2013, *see* ECF No. 14, the motion was stricken because Defendant FratHouse failed to appear by counsel and, as a limited liability corporation, is not entitled to appear *pro se*. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993). Nevertheless, the plaintiff has not sought an entry of default against Defendant FratHouse as a result of its failure to appear. Consequently, since venue is improper in this district as to all the defendants, *see infra*, the case against Defendant FratHouse will be transferred in conjunction with the transfer by motion of the case against Defendants Bivins and Goins. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 292 (3d Cir. 1994) (transferring entire trademark infringement action, including action against corporation that failed to appear by counsel, "so that the entire action may be transferred to the same district.").

1

grounds that venue in this district is improper and transfer of this case to the Middle District of Florida is warranted.

I.     BACKGROUND

The defendants operate a clothing business in Naples, Florida, for which business they maintain a website. *See* Compl. ¶ 26. The plaintiff alleges that the defendants have engaged in the sale of merchandise bearing the plaintiff's trademarks without authorization. *Id.* ¶ 27. Despite serving the defendants with multiple cease and desist letters, the plaintiff alleges the defendants continued to sell the allegedly infringing merchandise. *Id.* ¶¶ 33–37.

The plaintiff initiated this lawsuit on February 26, 2013. *See id.* at 1. Defendants Bivins and FratHouse, proceeding *pro se*, timely moved to dismiss the complaint on grounds of lack of personal jurisdiction, improper venue, and, as to Defendant Bivins, failure to state a claim. *See* Mots. Dismiss, ECF Nos. 13 and 14. After the plaintiff improperly filed a Motion for Default against Defendant Goins,[2] Defendant Goins, who is also proceeding *pro se*, filed a Motion to Dismiss on similar grounds. *See* Mot. Dismiss, ECF No. 29.

In October, 2013 the plaintiff filed a Motion for Temporary Restraining Order ("TRO"), seeking, *inter alia*, the immediate removal of all allegedly infringing merchandise from the defendants' website and an immediate cessation of the allegedly infringing activity. *See* Pl.'s Mot. TRO, ECF No. 34. The Court set a prompt hearing date on the plaintiff's TRO motion and directed that the parties "be prepared to discuss whether this Court has the power to enter such an Order, given the jurisdictional and venue disputes raised by the defendants." Minute Order (October 21, 2013). In advance of the TRO hearing, the Court also denied the three pending motions to dismiss without prejudice and granted the plaintiff limited discovery "to determine if

---

[2] The Court denied, without prejudice, the plaintiff's Motion for Entry of Default for failing first to obtain an entry of default from the Clerk of the Court, as required by Federal Rule of Civil Procedure 55(a). *See* Mem. Order at 6, ECF No. 36.

this Court has jurisdiction over the defendants and if venue is proper in this District." *See* Mem. Order at 4–6, ECF No. 36.[3]

Oral argument was heard on the plaintiff's TRO motion on October 23, 2013.[4] The Court granted the plaintiff's motion and imposed a Temporary Restraining Order on the defendants for the duration of the plaintiff's jurisdictional discovery period.[5] *See* Order Granting the Plaintiff's Mot. for TRO at 1, ECF No. 37; Minute Order (December 5, 2013). At the conclusion of jurisdictional discovery, the Court granted, with Defendant Bivin's consent, an extension of the temporary restraining order through the date of the Court's ruling on the anticipated renewed motions to dismiss. *See* Minute Order (December 23, 2013). Defendant Bivins and Defendant Goins subsequently filed a joint motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper venue under Rule 12(b)(3), and, as to Defendant Bivins, failure to state a claim upon which relief can be granted under Rule 12(b)(6). *See* Defs.' Mot. at 1.

## II. LEGAL STANDARD

Rule 12(b)(3) of the Federal Rules of Civil Procedure authorizes a party to move to dismiss a case for "improper venue." FED. R. CIV. P. 12(b)(3). Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires that a district court "dismiss, or if it be in the interest of justice, transfer" a case, which is filed "in the wrong division or district." 28 U.S.C. § 1406(a). Together, "Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper'. . . in the forum in which [the case] was brought." *Atl. Marine Constr. Co. v. U.S.*

---

[3] In this same order, the Court struck the plaintiff's Motion for Preliminary Injunction as improperly filed as one of over ten attachments to the Complaint, and ordered Defendant FratHouse to appear by counsel no later than October 31, 2014. *See* Mem. Order at 6, ECF No. 36. As noted previously, *see* n.1 *supra*, to date, Defendant FratHouse has not entered appearance by counsel.
[4] Counsel for the plaintiff appeared in person and Defendant Bivins appeared by telephone at this hearing. Defendants Goins and FratHouse failed to appear.
[5] The plaintiff's jurisdictional discovery period was extended until December 20, 2013 on the plaintiff's motion. *See* Minute Order (December 5, 2013).

*Dist. Court*, 134 S. Ct. 568, 577 (2013). The Supreme Court explained that "[w]hether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id*.

"When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)," *id*., which governs "the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1). Specifically, venue of a civil case is properly laid in the following three categories of judicial district: where "any defendant resides, if all defendants are residents of the State in which the district is located;" where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or where "any defendant is subject to the court's personal jurisdiction with respect to such action," so long as venue is unavailable in any other district. *Id*. § 1391(b).

The moving party objecting to venue must provide "sufficient specificity to put the plaintiff on notice of the defect" that the case fails to fall within one of the three categories set out in section 1391(b). 14D CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3826, at 496 (4th ed. 2013). Nevertheless, the burden remains on the plaintiff to establish that venue is proper since it is "'the plaintiff's obligation to institute the action in a permissible forum . . . .'" *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Freeman v. Fallin,* 254 F. Supp. 2d 52, 56 (D.D.C. 2003)); *see also* WRIGHT ET AL., § 3826, at 502, 505–06 ("[W]hen [an] objection has been raised, the burden is on the plaintiff to establish that the district he [or she] chose is a proper venue[,] . . . consistent with the plaintiff's threshold obligation to show that the case belongs to the particular district court in which the suit has been instituted.").

In reviewing a motion to dismiss for improper venue, the court "'accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor.'" *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011) (quoting *James v. Verizon Servs. Corp.,* 639 F. Supp. 2d 9, 11 (D.D.C. 2009)). The court may resolve the motion on the basis of the complaint alone, or, as necessary, examine facts outside the complaint that are presented by the parties, while drawing reasonable inferences in favor of the plaintiff. *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17–18 (D.D.C. 2013).

## III. DISCUSSION

Since the propriety of venue in this district has been challenged, the Court must evaluate whether venue is proper here under any of the three prongs of 28 U.S.C. § 1391(b). *See Atl. Marine Constr. Co.*, 134 S. Ct. at 577. According to the allegations in the Complaint, all three defendants are residents of the Middle District of Florida, specifically, the city of Naples, Florida. *See* Compl. ¶¶ 4–6. This allegation renders venue improper in this district under both § 1391(b)(1), since none of the defendants reside in this district, and § 1391(b)(3), since all defendants reside in Florida, making venue available in another district, namely, the Middle District of Florida. *See* 28 U.S.C. § 1391(b)(3) (providing for jurisdiction over a civil action in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect" to the action *only* if "there is no district in which an action may otherwise be brought.").

Thus, the plaintiff must show that venue is proper in this district under 28 U.S.C. § 1391(b)(2), which provides that "[a] civil action may be brought in—(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Indeed, this is the prong

of the general venue statute on which the plaintiff relies, alleging in the complaint that venue is proper in this district "because a substantial part of the events giving rise to the claims asserted herein arose in this district."  Compl. ¶ 12; *see also Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 56 (D.D.C. 2006) (finding where all defendants resided in another state, "plaintiff must establish that a substantial part of the events or omissions giving rise to the claim occurred in the District of Columbia.").[6]

The plaintiff begins its argument as to the propriety of venue in this district by stating "a substantial part of the events giving rise to an action may occur in more than one district."  Pl.'s Opp'n Defs.' Mot. ("Pl.'s Opp'n") at 19, ECF No. 52.  It is true that "in some cases, a plaintiff will have a choice among multiple districts where a substantial portion of the underlying events occurred."  *Modaressi*, 441 F. Supp. 2d at 57.  Nevertheless, the burden is still on the plaintiff to allege sufficient facts to indicate "a *substantial part* of the events or omissions giving rise to the claim occurred" in the chosen district.  28 U.S.C. § 1391(b)(2) (emphasis added).  It is in this respect that the plaintiff fails to satisfy its burden.

During the period of jurisdictional discovery authorized by the Court, the plaintiff uncovered the total number of transactions and sales allegedly infringing upon the plaintiff's marks.  *See* Pl.'s Opp'n at 3.  In total, the plaintiff discovered that only ten of the defendants' total transactions since they started operating their business—out of 733 total transactions, or 1.3 percent of the defendants' sales—were shipped or billed to addresses within the District of Columbia.  *See id.*  For the purposes of determining appropriate venue, the plaintiff alleges that

---

[6] The plaintiff also states that venue is proper in this district "because Defendants transact business in this district." Compl. ¶ 12.  In so doing, the plaintiff appears to conflate the standard for exercise of personal jurisdiction over the defendants under the District of Columbia's long-arm statute with the standard for assessing whether venue is proper here.

6

only two of those transactions involved goods bearing the allegedly infringing marks.[7] *Id.* One of those purchases was made by a member of the plaintiff. *See* Decl. of Nicole Lenon Johnson ("Johnson Decl.") ¶ 18, ECF No. 1-4. The other, which the plaintiff refers to as a "1913" tote bag, was cancelled and payment authorization was reversed, according to the defendants' submissions and documentary evidence. *See* Defs.' Joint Reply Mem. Supp. Defs.' Mot. ("Defs.' Reply") at 2 & n.2, ECF No. 53; *see also* Defs.' Reply Ex. 1 at 2, ECF No. 53-1 (order information for a "1913" tote bag showing order to be shipped to Washington, D.C. as cancelled with payment refunded). The plaintiff "reserves the right to challenge the validity" of the defendants' documentary evidence regarding the cancellation of this second allegedly infringing transaction, but offers no justification for such a challenge. *See* Pl.'s Surreply to Defs.' Reply ("Pl.'s Surreply") at 2–3, ECF No. 54-1. The plaintiff's complaint certainly does not provide any justification for such a challenge since it makes no reference to any specific items bearing the allegedly infringing marks that were shipped into this district. *See* Compl. *generally*. Thus, the plaintiff has not alleged with any specificity in its complaint that a substantial or, indeed, any allegedly infringing merchandise was shipped to the District of Columbia and jurisdictional discovery has confirmed only a single item purchased by a member of the plaintiff.

The D.C. Circuit has had few opportunities to address the propriety of venue when trademark infringement has been alleged, but the Circuit's analysis in *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 760 F.2d 312, 314 (D.C. Cir. 1985), makes clear that venue is improper in this district.[8] In that case, the plaintiff filed a trademark infringement action in this

---

[7] The plaintiff does not include in this number a third transaction that the defendants assert was modified so as not to include any allegedly infringing merchandise. *See* Pl.'s Opp'n at 3.

[8] No party addresses the application of *Noxell* to this case. Although *Noxell* was decided before 28 U.S.C. § 1391(b) was amended to account for a claim to arise in more than one district, the D.C. Circuit analyzed the claim at issue in *Noxell* under the Supreme Court's decision in *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185 (1979), which held that a claim could arise in more than one district. *See Noxell Corp.*, 760 F.2d at 316 (quoting *Leroy*, 443 U.S. at 185). Moreover, the D.C. Circuit's precedent prior to *Leroy* had held that a claim "arose" under the previous

7

district against two San Francisco barbeque restaurants and their sole proprietor for allegedly using certain trademarked terms on the defendants' barbecue sauce packaging. *Id.* The D.C. Circuit noted that "[a]t the time [the plaintiff] lodged its complaint here, no more than 200 cases of [the defendants'] product had been sold in the District [of Columbia]. This number of cases amounted to less than 1.5% of [the defendants'] total barbecue sauce sales," with "40%" of the defendants' sales occurring in California. *Id.* In response to the plaintiff's argument that, even if the claim arose in California, where the defendants were located, it also arose in the District of Columbia because the defendants' allegedly infringing products were available for sale "in local food shops" here, the Circuit observed that the plaintiff "appears to have collapsed or homogenized issues of personal jurisdiction and venue that should be analyzed discretely." *Id.* at 316; *see also Murdoch v. Rosenberg & Assoc., L.L.C*, 875 F. Supp. 2d 6, 10–11 (D.D.C. 2012) ("Analysis of the relevant facts under § 1391(b)(2) conforms to the general rule that questions of personal jurisdiction and venue are distinct." (internal quotation marks omitted)); *Day v. Cornér Bank (Overseas) Ltd.*, 789 F. Supp. 2d 150, 160 (D.D.C. 2011) ("[Q]uestions of personal jurisdiction and venue are distinct. The former concerns itself with the power of a court to adjudicate the rights and liabilities of a party, while the latter focuses on the most convenient location for litigation."). Repeating the fact that "[n]ot more than 200 cases had reached District of Columbia grocery shelves," and noting that "[d]efending a trademark infringement action some 3000 miles away from where all employees and corporate records are located would exceed 'inconvenience'—it would occasion a hardship for [the defendants]," the *Noxell* court

---

version of 28 U.S.C. § 1391(b) "where a substantial portion of the acts or omissions giving rise to the actions occurred." *Id.* at 317 n.8 (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978)). Consequently, the logic in *Noxell* is instructive as to how the current version of 28 U.S.C. § 1391(b) should be interpreted for the purposes of the instant matter.

held "that the District of Columbia may not be assigned as the locus of the claim in this case." *Id.* at 317.

Of particular importance to the D.C. Circuit in *Noxell* was the Supreme Court's instruction in *Leroy* that, when considering a plaintiff's choice of venue, "the convenience of the defendant (but *not* of the plaintiff)" was an appropriate factor to take into account. *Id.* at 316–17 (quoting *Leroy*, 443 U.S. at 185). The D.C. Circuit found "this conclusion inescapable: [the plaintiff] has chosen the District of Columbia simply to suit its own convenience." *Id.* at 317; *see also Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 496 F. Supp. 2d 137, 142 (D.D.C. 2007) ("Because venue is intended to protect defendants, 'courts often focus on the relevant activities of the defendant . . . in determining where a substantial part of the underlying events occurred.'" (quoting *Abramoff v. Shake Consulting*, *L.L.C*, 288 F. Supp. 2d 1, 4 (D.D.C. 2003)).

The plaintiff's proffered basis for proper venue in this district pales in comparison to the facts found to be insufficient for venue in *Noxell*. For example, the *Noxell* court focused on the fact that only a small fraction, amounting to about 1.5 percent of the defendants' sales, occurred in this district, but that percentage is a larger proportion than the alleged number of sales of allegedly infringing merchandise sold in this district by the defendants in this matter. At best, crediting the plaintiff's "challenge" to the cancelled sale, the plaintiff alleges that two sales of allegedly infringing merchandise resulted in goods being shipped into this district. *See* Pl.'s Opp'n at 3. This amounts to two-tenths of one percent, or .2 percent, of the defendants' total sales. *See id.* (detailing 733 transactions and alleging "two (2) involved merchandise bearing [the plaintiff's] Marks.").

In addition, the *Noxell* court considered and rejected the plaintiff's argument that "confusion" for the purposes of trademark infringement, could have occurred in the District of Columbia because two stores in the District carried both the plaintiff's and defendant's barbeque sauce products. *Noxell*, 760 F.2d at 317. By contrast, the plaintiff's complaint does not allege that licensed merchandise bearing the plaintiff's marks is being sold in this District. *See* Compl. *generally*. Indeed, the plaintiff only alleges that it has "granted hundreds of such licenses" to vendors who "actively compete for the limited available spaces to exhibit at Delta's national conventions and other events." Compl. ¶ 22.

Finally, the plaintiff admitted at the hearing held on its TRO motion that it was plainly bringing suit in this district to suit its own convenience. The plaintiff responded to a question from the Court as to why this case should not be transferred to the Middle District of Florida by stating "it's a hardship to try to try [this case] in Florida with counsel being here . . . so it would be a hardship for us in terms of what – where we're located and where our plaintiff is located." TRO Hrg. Tr. at 19:7-12, ECF No. 55. There is no need for the Court to infer that the plaintiff is bringing this case in this district solely for its own convenience since the plaintiff conceded this point in a direct answer to the Court.

The plaintiff's stated reason for bringing the instant suit in this district runs directly counter to the venue statute's "inten[t] to protect defendants," *Miski*, 496 F. Supp. 2d at 142, and this circuit's "commonsense appraisal of the implications of those events [that gave rise to the claim at issue] for accessibility to witnesses and records." *Sharp Electronics Corp. v. Hayman Cash Register Co.*, 655 F.2d 1228, 1229 (D.C. Cir. 1981) (quoting *Lamont*, 590 F.2d at 1134). There is little doubt that the defendants' witnesses and records will mainly be found in the Middle District of Florida, where all of the defendants reside and the business is operated.

Common sense, in addition to D.C. Circuit precedent, counsels that venue should lie there, not in this district where the only connection to the claims are that, arguably, two people, one of whom was a member of the plaintiff, placed orders through a generally accessible website for shipment of a small amount of allegedly infringing merchandise to the District of Columbia. *See Trenwyth Indus. Inc. v. Burns and Russell Co.*, 701 F. Supp. 852, 853; 856 (D.D.C. 1988) (holding that "one, although possibly two, direct sales to District of Columbia residents" was insufficient to trigger venue under previous version of 28 U.S.C. 1391(b) because "nearly all of the actions or events giving rise to [the suit] occurred at [the defendant's] various corporate locations in" another venue).

The plaintiff relies upon several cases from outside this circuit for the proposition that, in Lanham Act cases, a "substantial part" of the events giving rise to an infringement claim occurs where the alleged confusion as to the goods bearing the mark's origin occurs. *See* Pl.'s Opp'n at 19–20. These cases are either unpersuasive or undercut the plaintiff's argument, however, since each of the cases relied upon by the plaintiff, in addition to being non-binding on this Court, involved an additional factor not present in the instant matter, namely (1) advertising targeted at the forum or (2) substantial sales or other indicia of the presence of the defendant in the forum.

With respect to the first factor, the plaintiff relies on two cases that found venue proper in the plaintiff's chosen forum because the defendant in a trademark action had undertaken specific targeted actions, such as advertising, aimed at the challenged forum. In *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.* ("*Sutter Home*"), No. 05-0587, 2005 WL 701599, at *4 n.2 (N.D. Cal. Mar. 23, 2005), the court addressed the defendants' venue argument in a footnote and then only in the context of the likelihood of the plaintiff's success on the merits in the context of a motion for preliminary injunction. The court in *Sutter Home* was careful to note that, while it

11

found venue proper in the challenged district, it did "not foreclose the possibility that a different conclusion might be warranted upon consideration of a more complete record" and that its finding that consumers may be confused in the challenged district was merely sufficient to allow the court to reach the merits of the plaintiff's preliminary injunction motion. *Id.*

The *Sutter Home* court noted that sales in the challenged forum were "relatively modest," and based its finding that venue was proper in the challenged district on the authority of two cases, *Radical Products, Inc. v. Sundays Distribution*, 821 F. Supp. 648, 649–50 (W.D. Wash. 1992) and *Sidco Industries, Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343, 1346–47 (D. Or. 1991), which themselves based their findings of proper venue on the fact that the defendant in those cases directed advertising toward the challenged forum. *Id.* Here, the plaintiff has not shown any non-Internet based advertising engaged in by the defendants and has failed to show that the Internet advertising—primarily on social media sites—was aimed at this forum. *See* Pl.'s Opp'n at 12–13. Thus, to the extent that *Sutter Home* is persuasive, it cuts against the plaintiff in light of the absence of advertising from the defendants purposefully directed at this forum.

The court in *Gary Scott International v. Baroudi* ("*Baroudi*"), 981 F. Supp. 714, 718 (D. Mass. 1997), another case on which the plaintiff relies, focused on the trademark infringement defendant's targeted advertising in the challenged district, together with additional steps by the defendant to generate business there, to find venue proper under 28 U.S.C. § 1391(b). Specifically, the *Baroudi* court found venue appropriate in a state where the defendant had sold twelve allegedly infringing items, was actively seeking distribution at a major retailer in the forum state, and was soliciting business from the forum state's residents through its website. *See Baroudi*, 981 F. Supp. at 718. The *Baroudi* court noted that courts considering where trademark

infringement actions occurred typically "focused on the absence or presence of advertising and sales in the district." *Id.* (collecting cases). In the instant case, the plaintiff has been able to show no advertising directed at customers in this district and, at most, two sales of allegedly infringing merchandise that were shipped into this district. Under the *Baroudi* analysis, therefore, venue is improper here.

The remaining cases on which the plaintiff relies address the second factor that courts have found dispositive in assessing venue, namely, the substantial sales or other indicia of the presence of the defendant in the forum. In *Vanity Fair Mills, Inc. v. T. Eaton Co.* ("*Vanity Fair*"), 234 F.2d 633, 639 (2d Cir. 1956), for example, the court was primarily concerned with the extraterritorial application of the Lanham Act. The court found that because the majority of the allegedly infringing sales "with the exception of defendant's few mail order sales into the United States," occurred in Canada, Canadian law should apply. *See id.* Moreover, the *Vanity Fair* court found that since the American claims "appear to be of minor significance" when compared with the total allegedly infringing sales, dismissal on *forum non conveniens* grounds was appropriate. *See id.* at 647–48. *Vanity Fair*, therefore, implicitly acknowledged that venue may be appropriate in the district where a substantial number of sales are made, which plainly does not help the plaintiff here. *See id.*

Likewise, the court in *Allstar Marketing Group, L.L.C v. Your Store Online, L.L.C* ("*Allstar*"), 666 F. Supp. 2d 1109 (C.D. Cal. 2009), focused on the significance of the allegedly infringing sales activity in the challenged forum. In *Allstar*, the defendants were accused of selling allegedly infringing merchandise through an Internet website. *See id.* at 1116. The plaintiffs alleged that nineteen percent of the defendants' sales occurred in California, where venue was being asserted. *Id.* at 1129. The evidence proffered by the plaintiffs consisted of an

"internet printout of customer comments and complaints" related to the defendants. *Id.* The court, focusing on the level of sales that occurred in the challenged venue, found that "[e]ven drawing all inferences in plaintiffs' favor, the court cannot conclude, based on this evidence, that a substantial amount of infringing sales occurred in this district." *Id.* Nevertheless, the defendants came "forward with no evidence controverting plaintiffs' allegations regarding their sales." *Id.* The court found, therefore, that in the absence of any contradictory evidence from defendants, and in light of the holding in *Sutter Home* that "only a modest amount of sales of infringing product is sufficient to support venue in a particular district," the case would go forward. *Id.* at 1130 (internal quotation marks omitted).

*Allstar*, far from supporting the plaintiff's assertion of venue, weighs in favor of the defendants' motion. In the instant matter, there is substantial evidence regarding the sales engaged in by the defendants in this district, presented by both the plaintiff and the defendants, and it shows, at most, two sales causing allegedly infringing merchandise to be shipped into this district.[9] Even under the "modest" sales approach of *Sutter Home*, which was apparently adopted by the *Allstar* court, two sales do not amount to even a "modest" number of sales. *See Allstar*, 666 F. Supp. 2d at 1130 (implying that nineteen percent of a company's total sales was "modest" under the *Sutter Home* analysis). Moreover, the plaintiff has shown no evidence, after discovery, of any advertising purposefully directed at this forum. Indeed, if the plaintiff were correct, any company that has a generally accessible website would be vulnerable to a Lanham

---

[9] The defendants cite a footnote in *Allstar*, where the court noted it discounted sales to the plaintiff's employees "as these individuals were not confused by defendants' products," *Allstar*, 666 F. Supp. 2d at 1129 n.44, to argue that this Court should also ignore the defendants' sale of an allegedly infringing item to a member of the plaintiff. The plaintiff challenges this argument in its surreply, relying upon several unpublished district court cases from the Second Circuit for the proposition that discounting the sale of merchandise to someone affiliated with the plaintiff is improper. Pl.'s Surreply at 7–8 & n.3. The plaintiff notes that each of these cases failed to discount such sales when analyzing whether a defendant had "purposefully availed" itself of the forum's laws for the purposes of personal jurisdiction. *Id.* at 7 n.3. Thus, these cases are inapposite and, in any event, the Court is not discounting the sale of allegedly infringing merchandise to the plaintiff's member for the purposes of determining venue.

Act claim in any district in the United States—a result that would eviscerate the protections of the general venue statute. *See Miski*, 496 F. Supp. 2d at 142.

The last two cases on which the plaintiff relies are also unavailing since they too focused on the presence of the defendant or the defendants' sales in the challenged district. In *Cottman Transmission Systems, Inc. v. Martino* ("*Cottman*"), 36 F.3d 291, 292 (3d Cir. 1994), the Third Circuit found venue improper when a Pennsylvania franchisor attempted to sue several Michigan auto repair facilities in a Pennsylvania court. The dispute in *Cottman* centered on alleged activities that occurred exclusively outside the plaintiff's selected forum, except for the alleged preparation of a yellow pages advertisement for the alleged infringers that purportedly used the plaintiff's trademark. *See id.* at 295. The Third Circuit found that because the defendants' business was located in Michigan, the allegedly infringing advertisements were published in Michigan, and the trademarks were alleged to have been used in Michigan, venue was improper in Pennsylvania. *See id.* at 295–96. Thus, *Cottman* also supports the defendants' position that the mere presence of allegedly infringing material in a district—in *Cottman*, the prepared advertisement—is insufficient to support venue in that district, particularly when the defendants reside and "most, if not all, of the significant events" occurred in another forum. *See id.* at 295.

Finally, the facts in *R. Griggs Group Ltd. v. Consolidated Shoe, Inc.* ("*Griggs*"), No. C98-4676, 1999 WL 226211, at *1; *4 (N.D. Cal. Apr. 9, 1999), which is cited by the plaintiff, are distinguishable because in that case, the court found venue proper against corporations that had a regular presence, through a national sales force, in many districts, including two permanent salespeople in the district in which the plaintiff sought to establish venue. In *Griggs*, the two defendants were Virginia-based corporations with offices in two other states and five countries, in addition to "a nationwide sales force." *See id.* at *1. The defendants employed "more than

15

300 people, ha[d] a net worth of $78,888,038, and realized sales revenue of $62,347,375" the year before the suit was brought. *Id.* The *Griggs* court found that because "there is evidence that both [the plaintiff's] shoes and defendants' shoes are sold in this district, this is one of the districts in which confusion is likely to occur." *Id.* at *4. Based upon these facts, the *Griggs* court cited, *inter alia*, *Cottman* and *Vanity Fair* for the proposition that a "'substantial part' of the events giving rise to [a Lanham Act] claim occurs in any district where consumers are likely to be confused by the accused goods." *Id.*[10]

The instant case differs from *Griggs*' explicit finding that venue is proper where the allegedly infringing goods are being sold in direct competition with the mark-holder's goods—a holding rejected by this Circuit in *Noxell*—and the implicit finding that venue was proper in that case because the corporate defendants had employees in the challenged venue. In the instant case Defendants Goins and Bivins work for a small company, Defendant FratHouse, that employs, arguably, two people in Naples, Florida,[11] with gross revenue of $36,537 over the course of its existence. *See* Aff. of Alphonso D. Goins ("Goins Aff.") ¶ 4, ECF No. 51-2. The plaintiff, despite jurisdictional discovery that included documentary evidence of every sale engaged in by the defendants through its e-commerce vehicles, has uncovered, at most, two items allegedly bearing the plaintiff's marks sold to two people in the District of Columbia, and one of those people was a member of the plaintiff, who was not confused and promptly alerted the plaintiff that she had purchased the item. *See* Goins Aff. ¶ 7; Johnson Decl. ¶ 12. The plaintiff has failed to show a likelihood of confusion in this district through the sale of both the plaintiff's products and the defendant's products here, a factor found to be dispositive in *Griggs*,

---

[10] The *Griggs* court dismissed the D.C. Circuit's holdings in *Noxell* with no analysis beyond noting that *Noxell* was decided before the 1990 amendments to 28 U.S.C. § 1391(b)(2). *Id.*
[11] Defendant Bivins disputes the allegations that she is actively involved in the business activities of Defendants Goins and FratHouse.

16

since, as mentioned previously, the plaintiff has not pled that any of the plaintiff's merchandise is actually for sale in this District. Moreover, the minuscule number of sales in this district, together with the manner of those sales through a generally accessible website, falls far short of the implicit finding in *Griggs* that venue is appropriate where a company's employees are actively selling the allegedly infringing goods. *See Griggs*, 1999 WL 226211, at *1. Thus, *Griggs* is unavailing.

Since the plaintiff, after jurisdictional discovery, has failed to uncover evidence sufficient to show that a substantial part of the events giving rise to the plaintiff's claim occurred in this district, the plaintiff has failed to show that venue is proper in the District of Columbia under any of the prongs of 28 U.S.C. § 1391(b).[12]

Nevertheless, the Court will exercise its "sound discretion" to transfer this case to the Middle District of Florida since "the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." *Johnson v. Deloitte Servs., LLP*, 939 F. Supp. 2d 1, 6 (D.D.C. 2013) (quoting *Ellis-Smith v. Sec'y of the Army*, 793 F. Supp. 2d 173, 177 (D.D.C. 2011)). As the Supreme Court cautions, plaintiffs should "not be penalized by . . . 'time-consuming and justice-defeating technicalities.'" *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (quoting *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955)). The D.C. Circuit has held that transfer is "in the interest of justice" where procedural obstacles to the resolution of a case on the merits may be removed by a transfer, such as "lack of personal jurisdiction, improper venue and statute of limitations bars." *Sinclair v. Kleindienst*, 711 F.2d

---

[12] Since the Court finds venue to be improper in this forum and that transfer is appropriate, the Court need not address nor resolve the parties' arguments regarding lack of personal jurisdiction or failure to state a claim. *See, e.g.*, *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (internal quotation marks omitted); *Willis v. Chase Home Fin.*, 923 F. Supp. 2d 89, 92 (D.D.C. 2013) (concluding that since a transfer of venue was appropriate, the court "need not reach the merits of Defendant's arguments for dismissal for failure to state a claim"); *Pacific Maritime Ass'n v. NLRB*, 905 F. Supp. 2d 55, 58–59 (D.D.C. 2012) (same).

291, 293–94 (D.C. Cir. 1983); *see also Gonzalez v. Holder*, 763 F. Supp. 2d 145, 153 (D.D.C. 2011).

In the instant matter, the defendants concede that venue would be proper in the Middle District of Florida since "all Defendants reside [in] the Middle District of Florida" and because "a substantial part of events giving rise to the action occurred in the Middle District of Florida." Defs.' Mem. at 13. The defendants would not be prejudiced by a transfer "in light of [their] substantial connections to the district and the fact that the alleged [wrongful acts] occurred" in that district. *O'Keefe v. Blue & Gold Fleet, L.P.*, 634 F. Supp. 2d 284, 289 (E.D.N.Y. 2009). Thus, since the claim "could have been brought" in the Middle District of Florida under 28 U.S.C. §§ 1391(b)(1) or (b)(2), the Court finds it is in the interest of justice to transfer this case, pursuant to 28 U.S.C. § 1406(a), to the Middle District of Florida.

## IV. CONCLUSION

For the foregoing reasons, the defendants' Joint Motion to Dismiss is granted in part to the extent that it alleges venue is improper in this District and requests that this matter be transferred to the Middle District of Florida. Since the Court need not reach the merits of the defendants' alternative arguments for dismissal under Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) in light of the finding that transfer is appropriate, those portions of the defendants' joint motion are denied without prejudice so that the defendants may re-file, if appropriate, after the case is transferred.

An appropriate Order accompanies this Memorandum Opinion.

Date: February 19, 2014

_____
BERYL A. HOWELL
United States District Judge